Filed 5/9/22  P. v. Mejia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JESUS ALVAREZ MEJIA,<br><br>　　Defendant and Appellant. | F079996<br><br>(Madera Super. Ct. No. MCR02252)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Deanna Lamb, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant Jesus Alvarez Mejia[1] was charged and convicted of count 1, first degree murder, and count 2, attempted first degree murder, with firearm enhancements. Appellant was sentenced to indeterminate life terms on the convictions and enhancements.

In 2019, appellant filed a petition for resentencing pursuant to Penal Code[2] section 1170.95 and alleged his murder conviction was based on the felony-murder rule and/or the natural and probable consequences doctrine, and he was not the actual killer. The superior court denied the petition.

On appeal, his appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant has filed his own supplemental brief. We affirm.

## FACTS[3]

Rogelio Fernandez-Tovar (Rogelio) owned property in Madera County on which a barn and corrals were situated and used for horse training. On the morning of June 11, 1999, Silviano Fernandez-Tovar (Silviano), Rogelio's brother, was working a horse on the property. Alfredo Guzman (Guzman), who also kept a horse on the property, arrived about 9:30 a.m.

---

[1] Appellant's name appears in various ways throughout the record. The abstract of judgment and the opinion filed in appellant's prior appeal use the name Jesus Alvarez Mejia. To be consistent, we will do the same; no disrespect is intended.

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

[3] This court granted appellant's motion to take judicial notice of the record in his appeal from his convictions and sentence in *People v. Mejia* (July 29, 2002, F038504 [nonpub. opn.].) Appellant's petition and the People's opposition relied on the facts as stated in this court's prior opinion. The factual and procedural background herein are from this court's prior opinion. We provide these facts for background purposes but do not rely on these facts in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

2.

Between 11:30 a.m. and 12:00 p.m., Francisco "Chico" Tovar arrived,[4] and appellant and one or two other people were also there. Appellant sought to make a deal with Guzman whereby appellant would trade his van for one of Guzman's horses. Guzman did not want to trade, but appellant was insistent, and Guzman eventually agreed to the deal.

Later, appellant proposed a wager where the ownership of both the horse and the van would be decided by a toss of a coin. Again, Guzman did not want to wager, but was eventually persuaded. Guzman won the toss of the coin. Appellant became angry at the results and, after arguing awhile, challenged Guzman to a fight. Guzman refused to fight, and appellant eventually walked away with Chico, and they went to appellant's house, which was nearby.

About 7:00 p.m., Guzman and Rogelio went to get some chicken from the store. When they returned, several people sat in the shade of some trees and ate and drank beer. About an hour later, they heard shots. Immediately thereafter, Flor Figueroa (Figueroa), appellant's then-girlfriend, warned the group: "Be careful because [appellant has] already killed one man and wants to kill the other one."

Soon thereafter, appellant ran up to Guzman, pointed an automatic pistol at Guzman's chest, and pulled the trigger three times. The gun did not fire because it had jammed. Appellant pointed the pistol at two other people, but the gun did not fire. Rogelio and Silviano tackled appellant, disarmed him, and held him until the sheriff's officers arrived.

Chico had been shot twice and died from the bullet wounds. Dr. Jerry Nelson, a pathologist, testified either of the two gunshot wounds would have been fatal. Dr. Nelson testified the first gunshot entered through the shoulder and exited through the mouth; this

---

[4] We use the decedent's nickname (Chico) and the first names of his brothers Silviano Fernandez-Tovar (Silviano) and Rogelio Fernandez-Tovar (Rogelio), to avoid confusion and to be consistent with the use of names in the record so far as is possible. No disrespect is intended.

3.

trajectory would have been an unlikely result if there had been a hand-to-hand struggle. Dr. Nelson testified the second gunshot entered at the back of the head and could not possibly have been inflicted as a result of a hand-to-hand struggle. Dr. Nelson stated the second shot was more consistent with the theory that Chico was facing away from appellant when the shot was fired.

**Figueroa's Testimony**

At the preliminary hearing, Figueroa testified to events surrounding the shooting of Chico. Between the time of the preliminary hearing and the trial, she moved to Mexico and did not return for the trial. The trial court found she was unavailable, and her testimony from the preliminary hearing was read into evidence under the former testimony exception to the hearsay rule.

Figueroa testified at the preliminary hearing that she and appellant's brother were at the residence that she shared with appellant. Appellant came home with Chico. After going for a swim and eating some food, appellant told Figueroa he lost the van in a wager involving the toss of a coin. Figueroa walked over to Rogelio's property where the others were, to talk to some of the women about what had happened. She suggested to the other women that the men should talk over what had happened the following day when they were sober.

As Figueroa was walking back, she met appellant, Chico, and Chico's son. Appellant and Chico were arguing or talking loudly, and Chico was ordering appellant to return to the house. Figueroa overheard appellant say that if Chico did not let go of him, he was going to kill Chico. Chico responded by saying, "[K]ill me, kill me."

Figueroa saw appellant pull out the pistol he was carrying. She testified that the two men started wrestling over the pistol. She ran for help and heard shots when she was too far away to see what had happened. Figueroa testified that she did not see the shots fired. She ran back to the residence with appellant's son, who called the police.

**Defense Case**

Appellant testified at trial that he made a deal with Guzman, trading his trailer for Guzman's horse. Appellant also testified there had been a winner-take-all bet on the flip of a coin, but claimed Guzman called off the bet while the coin was in the air.

Appellant testified that after he had finished swimming and eating, he went outside to look for his children and saw Chico by the open door to the pool house. When appellant approached, he saw the pistol inside a box in the pool house. Appellant claimed he sold the pistol to Chico's father. Appellant testified he took the pistol, stuck it in his waistband, and started off with the intent of returning both the pistol and Chico to Chico's father's house.

Appellant testified that Chico, for reasons that are not clearly explained, tried to grab the pistol from appellant, and a wrestling match ensued. The pistol fell to the ground, and they both tried to pick it up. Appellant testified the gun went off when he was poked in the eye during the wrestling match.

Appellant denied he ever pulled the trigger on the pistol or intended for it to go off. He claimed the firing of the pistol was an accident and that he did not intend to hurt anyone. The closing argument of appellant's counsel was consistent with his testimony that the pistol accidentally discharged.

## PROCEDURAL BACKGROUND

On August 25, 1999, an information was filed in the Superior Court of Madera County charging appellant with count 1, first degree murder of Chico (§ 187, subd. (a)), and count 2, attempted first degree murder of Guzman (§§ 664, 187, subd. (b)), with firearm enhancements (§ 12022.53, § 12022.5).

**Convictions and Sentencing**

On April 19, 2001, after a jury trial, appellant was convicted of count 1, first degree murder, with enhancements that he personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)), and personal use of a firearm (§ 12022.5,

5.

subd. (a)); and count 2, attempted first degree murder, with enhancements for personal use of a firearm (§ 12022.53, subds. (b), (e)(1), § 12022.5, subd. (d)).

On June 11, 2001, the court sentenced appellant to 10 years for the section 12022.53 firearm enhancement attached to count 2, plus life in prison with the possibility of parole for count 2, attempted first degree murder; with a consecutive term of 25 years to life for count 1, first degree murder; and another consecutive term of 25 years to life for the section 12022.53 firearm enhancement. The court stayed the terms for the section 12022.5 enhancements.

**Appellant's Direct Appeal**

On July 29, 2002, this court affirmed appellant's convictions and sentence. On appeal, appellant argued the trial court improperly admitted Figueroa's testimony under the former testimony exception to the hearsay rule. This court agreed that the prosecution failed to demonstrate due diligence in their efforts to secure Figueroa's presence at trial, but concluded the error was harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24.

> "Figueroa's prior testimony was, at most, equivocal with respect to [appellant's] guilt or innocence. Her testimony tended to confirm most of [appellant's] account of what [appellant] did from the time he went back to his house until he headed back toward the group with Chico. Figueroa's testimony contradicted [appellant's] only where she testified Chico was trying to direct [appellant] back to his house and [appellant] threatened to kill Chico if he did not stop trying to restrain [appellant]. Consistent with [appellant's] testimony, Figueroa testified she saw the two wrestling over possession of the gun. She did not actually see the gun go off. Figueroa's testimony was thus not inconsistent with [appellant's] general defensive theory that there had been a struggle for the gun, which was accidentally and unintentionally discharged.

> "The central issue in the trial on Chico's murder was whether the killing was intentional or accidental. Far more damaging to [appellant's] theory of an accidental shooting was Guzman's testimony of [appellant's] attempt to shoot him and Silviano's testimony that he heard Figueroa warn everyone that [appellant] had killed Chico and was going to kill Guzman.

6.

Silviano also testified that when [appellant] was asked why he killed Chico, [appellant] replied 'I killed [Chico] because he sang it to me,' which Silviano interpreted to mean because Chico persistently tried to prevent [appellant] from causing trouble with Guzman. The ballistics testimony also provided strong evidence upon which the jury could have rested its finding that the shooting was not accidental.

"Thus, the volitional nature of the killing was established by evidence of [appellant's] statements that was independent of, and less equivocal than, Figueroa's testimony. We conclude the jury's finding that the shots that killed Chico were fired intentionally rested firmly on evidence other than Figueroa's prior testimony. To the extent Figueroa's prior testimony provided evidence that the killing was intentional, the evidence was merely cumulative. Figueroa's testimony, being both ambiguous and equivocal, was harmless beyond a reasonable doubt." (*People v. Mejia*, *supra*, F038504, at pp. 11–12.)

This court rejected appellant's second argument and held the trial court did not erroneously refuse his request for an instruction on imperfect self-defense.

"[Appellant's] theory of the case is clear: he was trying to take the pistol back to Chico's father, he and Chico started wrestling for possession of the pistol, and the pistol discharged accidentally which caused Chico's death. [Appellant] specifically denied pulling the trigger and specifically denied intentionally discharging the pistol.

"[Appellant's] theory focuses on causation, not on the presence or absence of criminal intent. In other words, [he] did not ask the jury to believe that he shot Chico because he had an honest but unreasonable fear of being hurt or killed; he asked the jury to believe that he did not shoot Chico at all. He asked the jury to believe the pistol was accidentally and unforeseeably discharged as a result of a struggle by each to get the pistol away from the other. [Appellant] did not mention, either in his own testimony or in closing arguments, that he killed Chico in the reasonable or mistaken belief that he needed to do so in order to protect himself." (*People v. Mejia*, *supra*, F038504, at p. 13.)

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of appellant's petition for resentencing that he filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) ( Senate Bill 1437), that was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder

7.

liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959, italics added (*Lewis*).)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines

that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957.) *Lewis* held the language of section 1170.95, subdivision (c) "is mandatory: 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' " (*Lewis,* at p. 963, italics added in original.) The court's failure to appoint counsel only constitutes state error subject to review under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis,* at p. 973.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.)

9.

*Lewis* further held that after appointing counsel, the trial court could rely on the record of conviction to determine whether the prima facie showing is made "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) The record of conviction includes a prior appellate opinion, although it will be case specific. (*Id.* at p. 972.) The prima facie finding under section 1170.95, subdivision (c) is limited, and the court must accept the petitioner's factual allegations as true and cannot reject the allegations on credibility grounds without conducting an evidentiary hearing. (*Lewis,* at p. 971.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Lewis,* at p. 972.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020–2021 Reg. Sess.; Stats. 2021, ch. 551, § 1.) (Senate Bill 775.) As a result of the amendments, section 1170.95 clarified that "persons convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a).)

The amendments also codified the holding in *Lewis* that a petitioner has the right to appointment of counsel, if requested, prior to the court making the prima facie finding: "Upon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to

represent the petitioner." (§ 1170.95, subd. (b)(3).) After appointment of counsel, the parties shall have the opportunity to submit briefing, and "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Id.* at subd. (c).)

If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause. If the court declines to issue an order to show cause, it shall provide a statement fully setting forth its reasons for doing so. (§ 1170.95, subd. (c).)

If the court issues the order to show cause and conducts a hearing, the prosecution has the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*, as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

## APPELLANT'S PETITION

On March 1, 2019, appellant filed a petition for resentencing pursuant to section 1170.95 and requested appointment of counsel.

11.

The petition was supported by appellant's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that stated he was entitled to resentencing under section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder under the amended versions of sections 188 and 189.

Appellant further declared he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, or assist the actual killer; and he was not a major participant in the underlying felony who acted with reckless indifference to human life.

The court appointed counsel to represent appellant and ordered the prosecutor to file a response.

**The People's Opposition**

On April 26, 2019, the People moved to dismiss the petition and argued Senate Bill 1437 was unconstitutional.

In the alternative, the People further argued appellant's petition should be denied because he failed to make a prima facie case for eligibility. The People's opposition "paraphrased" the facts from this court's prior opinion, and asserted appellant was ineligible for relief because he was the actual killer based on his own trial testimony. While appellant claimed they fought over the gun, and it accidentally discharged, he did not testify that anyone else was present during the alleged struggle, and the jury disbelieved his testimony since he was convicted of first degree premeditated murder with the personal use enhancements.

**Appellant's Response**

On July 11, 2019, appellant filed a response and argued the legislation was constitutional.

12.

As to the prima facie finding, appellant relied on his trial testimony, as summarized in this court's opinion, and argued that he was not the actual killer, he did not act with malice or intent to kill, and it was possible the victim was responsible for his own death. Appellant further argued he did not act with reckless indifference to human life, he never pulled the trigger, and the gun accidentally went off.

**The Court's Denial of the Petition**

On August 2, 2019, Judge Rigby held a hearing on the petition. Appellant was present with counsel. The court stated it had reviewed the pleadings and invited argument. Both parties submitted the matter.

The court denied the petition and found the statutory amendments enacted by Senate Bill 1437 were unconstitutional. The court then addressed the merits of the petition's allegations: "[A]nd then also with regard to the *new facts* in the case indicating that under the facts of this case, [appellant] was the actual killer involved in the case and, therefore, would not be qualified for the relief requested, even if the matter were constitutional under [section] 1170.95. The People have laid that forth in some detail." (Italics added.)

The court stated that appellant's pleadings took the position "that the killing of the victim in this matter was a result of a firearm accidentally discharging" and asked the prosecutor to address that claim. The prosecutor replied that appellant was "trying to relitigate the murder trial" and the "whole self-defense issue. [T]he jury didn't buy that so to do that here in this motion I don't think applies; it's whether he was the shooter or not, and I think the facts pretty much speak to the fact that he was."

The court agreed there was "nothing else in the record that would indicate otherwise," and asked appellant's counsel if he wanted to respond. Counsel declined.

The court again found Senate Bill 1437's statutory enactments were unconstitutional. It also denied the petition because appellant was "the actual killer

13.

involved in this matter, irrespective of the position of the defense that it was merely an accident of the shooting, the Court is not persuaded."

On September 16, 2019, appellant filed a notice of appeal from the court's order and requested and received a certificate of probable cause.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on February 17, 2021, we invited appellant to submit additional briefing.

### Appellant's Supplemental Brief

On May 24, 2021, appellant filed a supplemental brief with this court. He cited to the trial court's findings when it denied the petition, and argued the court violated his due process rights because it improperly relied on "new" facts at the prima facie stage, and that it could not make any factual findings unless it had issued an order to show cause and conducted an evidentiary hearing.

Appellant correctly notes that a trial court cannot make factual or credibility findings at the prima facie stage of evaluating a section 1170.95 petition. (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.) Once the court appoints counsel, it may rely on the record of conviction, including the prior appellate opinion, to determine whether the prima facie showing was made "to distinguish petitions with potential merit from those that are clearly meritless." (*Id.* at p. 971.)

At the August 2, 2019, hearing on the petition, the trial court stated that "with regard to the *new facts* in the case indicating that under the facts of this case, [appellant] was the actual killer involved in the case." (Italics added.) The court's statement is quizzical because there are no "new facts" in the People's opposition to appellant's

14.

petition. Instead, the People's opposition simply restated the facts as contained in this court's opinion that affirmed appellant's convictions and sentence. Appellant similarly relied on this court's opinion in his reply and summarized his trial testimony about the alleged accidental discharge, as set forth above.

While the trial court could not make factual findings at the prima facie stage, it appears the court relied on the facts as summarized in the parties' pleadings that were from this court's prior opinion. The opinion from appellant's direct appeal is part of the record of conviction that may be considered to determine whether the petitioner has made a prima facie showing of resentencing eligibility. (*Lewis, supra*, 11 Cal.5th at p. 972.) However, the role of the appellate opinion is circumscribed. The factual summary contained in an appellate opinion is not considered admissible evidence regarding a petitioner's resentencing eligibility (§ 1170.95, subd. (d)(3)), and the court may not engage in factfinding based on the appellate opinion at the prima facie stage (*Lewis,* at p. 972).

To the extent the court engaged in premature factfinding at the prima facie stage (§ 1170.95, subd. (c)), we may affirm the denial of the petition if petitioner was not prejudiced by the statutory errors in this case. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.) To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent the statutory error, his petition would not have been summarily denied without an evidentiary hearing. (*Lewis,* at pp. 972–974; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.) The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis,* at p. 966.)

Pursuant to section 1170.95, a petitioner is ineligible for resentencing if he or she was the actual killer, acted with the intent to kill or malice aforethought, or was a major participant in the underlying felony who acted with reckless indifference to human life.

15.

(§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *People v. Gentile, supra*, 10 Cal.5th at p. 842.)  Appellant argues he was not the "actual killer" because "the [victim's] death was accidental in the course of defending myself and without lawful intent."  Appellant's arguments address causation, and causation does not involve imputed malice that is now invalid after the enactment of Senate Bill 1437.  (See, e.g., *People v. Cervantes* (2001) 26 Cal.4th 860, 871–872; *People v. Roberts* (1992) 2 Cal.4th 271, 321–322; *People v. Fiu* (2008) 165 Cal.App.4th 360, 371–372.)  "The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved."  (*People v. Allison* (2020) 55 Cal.App.5th 449, 461.)

Finally, appellant argues his trial counsel was prejudicially ineffective for failing to introduce evidence at his trial about the victim's alleged aggressive nature and prior violent acts, and that evidence would have supported his request for instructions on self-defense.  Appellant cannot use the instant petition to reassert arguments that were raised and rejected on direct appeal.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.